OPINION OF THE COURT
Lester Evens, J.
Petitioner seeks an order for permission to conduct discovery pursuant to CPLR 408 and 3102. The respondents, tenant and undertenants, separately cross-moved to dismiss the petition on a variety of grounds. These cross motions are granted on the ground that the petitioner has not stated a cause of action for eviction, and on the ground that this court does not have subject matter jurisdiction to determine whether the subject premises of this proceeding is the respondent’s primary residence.
The tenant is a rent-controlled tenant. A 30-day notice of termination was served on the tenant and the undertenants on July 13, 1984. This holdover proceeding was brought on the ground that the tenant does not occupy the premises as her primary residence.
The New York City Rent and Rehabilitation Law and the New York City Rent and Eviction Regulations, as well as the Rent *938 Stabilization Law and the Code of the Rent Stabilization Association of New York City, Inc., and the Emergency Tenant Protection Act of 1974 (ETPA), reveal a consistent statutory scheme in that each of these statutes and accompanying regulations consists of two basic substantive elements, one relating to coverage under the statute and the other dealing with implementation. (See, this court’s decision in Axelrod Co. v Dixon Studio, 122 Misc 2d 770 [Civ Ct, NY County 1983].)
The coverage element of each of the statutes deals with such subjects as who is covered under the law, who is exempt, how much rent may be charged, how adjustments may be made in the rent, and when apartments may be decontrolled. The implementation element deals with sanctions against violators, the authority of the administrative agencies to administer those sanctions, the grounds under which a landlord may evict a tenant, as well as various procedural matters. In each of the three laws, the basic outline is the same; coverage and implementation are the cornerstones of the law.
The explicit reference to primary residence is within the coverage portion, not in the evictions section of the implementation element. (See, Rent and Rehabilitation Law, Administrative Code of City of New York § Y51-3.0 [e] [2] [i] [10], as amended by L1983, ch 403, § 42.) Significantly, the Legislature, in enacting the Omnibus Housing Act of 1983, maintained the nonprimary residence provisions as a basis of decontrol within the coverage element. Neither in the past nor at present has nonprimary residence ever been a ground for eviction. Never has the Legislature specified nonprimary residence as a reason for accelerating the lease term or terminating the landlord-tenant relationship. (Attention is drawn to Rent and Rehabilitation Law, Administrative Code § Y51-6.0, New York City Rent and Eviction Regulations § 52, as to what the Legislature denotes as grounds for accelerating a lease term and eviction of a tenant.)
Prior to the passage of the Omnibus Housing Act (L 1983, ch 403), administrative agencies made determinations of a tenant’s primary residence status under each of the rent-controlling laws. Under the Rent and Rehabilitation Law, determination of a tenant’s primary residence status was made by the Administrator of the Housing and Development Administration. (See, New York City Rent and Eviction Regulations § 18.) If the Administrator made a determination that the tenant did not occupy the premises as a primary residence, then the premises became decontrolled and no longer subject to rent control, at *939 least as to that tenant. An administrator’s order did not constitute an independent ground for eviction of the tenant. The effect of decontrol simply allowed a landlord, at the expiration of the tenant’s term, to either evict or renew that tenant’s lease at agreed terms, subject only to the forces of the marketplace. Primary residence was not then nor is it now a violation of the landlord-tenant relationship and, therefore, not a ground for accelerating the term of the lease.
In the Omnibus Housing Act, the Legislature, cognizant of the backlog and delays in the administrative process of determining a tenant’s primary residence status, decided to relieve the agency of that administrative burden. With the hope and intention, no doubt, of improving the process, the Legislature devised the “solution” of transferring to the courts the jurisdiction to determine a tenant’s primary residence status. (Rent and Rehabilitation Law, Administrative Code § Y51-3.0 [e] [2] [i] [10], as amended by L 1983, ch 403, § 42.) Nonprimary residence was not added as a new ground for eviction. The change made by the Legislature simply shifted to the courts the responsibility for determining if an apartment should be decontrolled. Such a determination of the “legal rights of the parties” can only be made by seeking a declaratory judgment pursuant to CPLR 3001. The Civil Court does not have jurisdiction to render a declaratory judgment on the issue of a tenant’s primary residence. (See, CCA 201, 212-a; NY Const, art VI, § 15.)*
Since a finding of nonprimary residence by the Supreme Court would be a finding of decontrol, the Legislature went on further to say that in the event that the landlord should, after a favorable declaratory judgment, seek to evict the tenant on that ground, the landlord must first give the tenant 30 days’ notice of its intention to do so. (Rent and Rehabilitation Law, Administrative Code § Y51-3.0 [e] [2] [i] [10], as amended by L 1983, ch 403, § 42.) This is the Legislature’s direction to the Supreme Court that any declaratory judgment of nonprimary residence must contain the requirement for a 30-day notice of intention before an eviction may be implemented.
The petitioner’s motion for discovery is denied as moot. {See also, this court’s decision in Rose Assoc. v McDaniel, Civ Ct, NY County, Mar. 28, 1985, L & T 86988/84.)
The motion to amend the petition to correct the spelling of the tenant’s name is granted.

 With regard to rent-stabilized and ETPA protected tenants, see, Kace Realty Co. v Levy (127 Misc 2d 940 [Civ Ct, NY County]).